RAGAN *et al.*, Defendants in Error, v. McCOY, Plaintiff in Error.

1. The trial of the issues raised in an action for the recovery of money only, to which the practice act of 1849 is applicable, is for the jury, unless a jury trial is waived; the jury should be allowed to try all the issues, the court declaring the law; it would be improper and irregular to submit portions of the issues to the jury and reserve the remainder for the determination of the court.

2. *Quere*, where a court appoints three commissioners to sell and convey land, and they make a sale as directed, and after the sale and before making of the deed two of the commissioners die, whether the deed of the surviving commissioner acknowledged in open court would be valid and effectual?

3. Where streets of a town have once been dedicated to the public, the proprietors can not resume the property in such streets; there may be a dedication to the public of the streets of a town although the proprietors laying out such town may not comply with the provisions of the act concerning the plats of towns and villages. (R. C. 1845, p. 1055.)

4. The acknowledgment of the plat of a town by the proprietors under the act of February 12, 1845, (R. C. 1845, p. 1055,) is not rendered defective by reason of a failure of the person taking the acknowledgment to state in the certificate the fact that the persons making the same were personally known to him to be the persons executing the plat.

5. Where two persons are tenants in common of land, and one of them receives a benefit therefrom, but in nowise interferes with the joint use of the land by the other, and does not affect its value in any manner, it would seem that he does not render himself liable to account to such other joint tenant for a proportionate share of the benefit received.

*Error to Clay Circuit Court.*

This was a suit commenced in the year 1853 by Jacob Ragan, F. P. McGee, William Gillis, Robert Campbell, and William B. Evans, against John C. McCoy and the unknown heirs of Henry Jobe, deceased. William B. Evans dying, his heirs were made parties plaintiff. The suit was originally commenced before the Jackson circuit court. It was transferred by change of venue to Clay county. Plaintiffs in their petition state that in the year 1838 an association was formed by certain individuals, (including some of the plaintiffs and McCoy, the defendant,) fourteen in number, for the purpose of purchasing a certain tract of land contain-

ing about one hundred and fourteen acres; that when said land was offered for sale by the commissioners appointed by the Jackson circuit court they bought the same; that two of the three commissioners appointed to sell and convey said land, Peter Booth and Elliot Johnson, died before making a deed to the purchasers; that Robert Campbell, who was not one of the original purchasers, acquired the interests of three of those purchasers; that in August, 1843, James B. Davenport, the surviving commissioner, executed a deed conveying said land to the said purchasers, Robert Campbell being substituted in place of three of them, each of the eleven original purchasers receiving each one-fourteenth and Robert Campbell three-fourteenths. The petition then proceeds to set forth various conveyances by which, as is alleged, the title became distributed as follows: Ragan one-fourteenth, Evans one-fourteenth, McGee two-fourteenths, Gillis three-fourteenths, Campbell four-fourteenths, McCoy two fourteenths, and the said Jobe or his unknown heirs one-fourteenth; that on the 30th of April, 1846, the proprietors of said tract having previously laid off thereon the town (now city) of Kansas and made a regular plat of the same, a portion of said company, to-wit, Ragan, McGee, McCoy, Gillis, Jobe, and Evans, duly acknowledged said plat, and the same on said April 30, 1846, was filed in the office of the recorder of the county of Jackson; that by said plat and the certificate of acknowledgment thereon endorsed said proprietors reserved to themselves individually and collectively the exclusive right and privilege of ferriage on said town tract, and the exclusive right of landing and fastening all ferry-boats and other watercrafts used for the purpose of ferriage to the bank in front of said town; that they are as a company and as tenants in common jointly entitled to the ferry privileges and landing on this, the south, side of the Missouri river; that McCoy has taken possession of and has used and enjoyed the same for a long series of years, to-wit, since the filing of said plat, and has taken and used more than his due proportion of the benefit thereof or of the profits arising from said ferry; that

said McCoy, having taken more than his due proportion of the profits or benefits arising from said ferry, is and was bound to pay to each of the plaintiffs his interest in the profits arising from said ferry; that McCoy refuses so to settle and pay over, although demand has been made; that said ferry privilege is and has been worth since April 30, 1846, at least nine hundred dollars; that he is liable to pay plaintiffs at least four hundred and fifty dollars as rent per year from said date.

The defendant McCoy by his answer denied that the interests of the several plaintiffs in the tract upon which the town of Kansas had been laid out were as charged; alleges that all of said land except a very small amount had been divided by agreement; denied that an effectual reservation had been made as charged; that the plaintiffs are jointly entitled to the ferry privilege; or that defendant has taken or received more than his due share or proportion of the benefit thereof or of the profits arising therefrom; or that he owes plaintiffs any thing whatever of profit arising from said ferry; or that the ferry privilege was worth the sum charged. By a supplemental answer defendant set up a dedication to the public of the land used for the purposes of a ferry long before the filing of the plat of 1846.

At the trial the court submitted to the jury the following issues: "First—The petition asserts and the answer denies that plaintiffs and defendant were tenants in common of the ferry privilege mentioned in the pleadings. Second—The petition asserts and the answer denies that the yearly value of the said ferry privilege was worth nine hundred dollars. The jury will find whether the said parties were tenants in common, and how much the yearly rent of said ferry privilege was worth."

In support of the issues the plaintiffs adduced in evidence various conveyances to themselves from various parties. They also introduced in evidence, against the objections of defendant, an original plat of the town of Kansas, on which the blocks and streets of the town were laid out. On the margin

of the face of this plat was the following memorandum : "The proprietors reserve to themselves and to their heirs and assigns forever the exclusive right of ferriage on this town tract." On the back of this plat there was this certificate of acknowledgment : " State of Missouri, county of Jackson, ss. Personally appeared William Gillis, Fry J. McGee, John C. McCoy, Jacob Ragan, Henry Jobe, William B. Evans, before me, Walter Bates, a justice of the peace within and for the township of Kaw, county and state aforesaid, and severally acknowledged the within town plat to be their act and deed for the purposes therein set forth ; hereby conveying and granting for public use all the streets, alleys, squares and public grounds as shown on the within plat ; reserving, however, to themselves, individually and collectively, and to their heirs and assigns forever, the exclusive right and privilege of ferriage on said town tract, and the exclusive right of landing and fastening on said town tract all ferry-boats and other water-craft used for the purpose of ferriage on the bank in front of said town. Taken and certified this 30th day of April, 1846. Walter Bates, J. P." " Filed 30th day of April, 1846. S. D. Lucas, clerk." Plaintiffs also introduced T. A. Smart as a witness, who testified that in 1839 McCoy was keeping a ferry from the site of the town of Kansas to the opposite shore ; that he had kept it ever since ; that about that time the town of Kansas was laid out, and there was a public sale of lots according to a survey made by one Donahoe ; that nothing was said at the time of the sale of the lots of a reservation of ferry privileges ; that Front street has ever since been used as a street ; that McCoy was the owner of the land on the north side of the river ; that some of the plaintiffs ran a ferry across the river a part of the year before 1846 ; that he had never heard of McCoy's objecting to their running or landing their boats on his lands or the town site ; that up to 1846 the ferry privilege was worth nothing ; that since that time the ferry, including both sides of the river, was worth an annual rent of seven hundred dollars. The court refused to permit the

witness to answer the question asked by defendant whether McCoy's keeping up the ferry had not been of immense advantage in building up the town of Kansas and enriching the owners of the site.

The plaintiffs offered in evidence the deed executed by Davenport, the surviving commissioner, to the proprietors of the town site. This deed recited the sale of the land by the three commissioners, the transfer of the interests of three of the purchasers to Robert Campbell, and the death of two of the commissioners. The entry of acknowledgment of said deed by Davenport in open court recites the death of the two commissioners Johnson and Booth.

William S. Donahoe testified in behalf of defendant that in 1838 or 1839 he laid out and made a plat of the town of Kansas ; that he was employed to do so by one of the proprietors of the town site ; that there was a public sale of lots in 1838 or 1839 ; that a nnmber of lots were sold at said sale ; that they were sold as laid out on said plat. This plat was found in the recorder's office with the following endorsement thereon : " Filed 3d of May, 1839.. Samuel C. Owens, clerk." Owens was recorder at the date of this endorsement. The court refused to permit this endorsement or entry to be given in evidence. The plat was received in evidence.

The plaintiffs moved the court to instruct as follows : " 1. If the jury believe from the evidence that plaintiffs, or any of them, and defendant McCoy were tenants in common from May 1, 1846, till August 12, 1853, in the ferry privileges at Kansas city, then they will find the first issue for plaintiffs or such of them as may be tenants in common. 2. To constitute tenants in common, the plaintiffs or some of them must have been joint owners of the said ferry privileges with McCoy. 3. A ferry privilege is an incident to land, and the proprietors of the town of Kansas had the right to reserve the ferry privileges when they laid off and made the plat of said town. 4. By the plat of the town of Kansas, made out and acknowledged by the proprietors Ragan, Gillis, Evans,

Ragan v. McCoy.

McGee, Jobe and McCoy, and filed in the recorder's office of Jackson county in April, 1846, and the endorsements thereon, the proprietors, or such of them as acknowledged the said plat, reserve to themselves all ferry privileges that attached to said town tract, and the reservation so made is not inconsistent with the dedication of the streets to public uses. 5. If the jury find from the evidence that plaintiffs, or part of them, and McCoy, in April, 1846, made, acknowledged and filed a plat of said town with the reservation so made thereon, then the said plaintiffs, who signed the same, and the said McCoy, are, as between themselves, bound by said plat and reservation, notwithstanding a plat and a sale of a few lots may have been made in 1839. 6. So far as this case is concerned, there is but one legal plat, and that is the one read in evidence, dated in April, 1846. 7. The plaintiffs, who acknowledged the plat of April, 1846, and the said McCoy, are bound by said plat, and they can not go behind it ; and before the jury can find for McCoy, they must find that he did not acknowledge the said plat. 8. The legal effect of the reservation of the ferry privileges on the plat of April, 1846, was to retain in the proprietors, to-wit, Ragan, Gillis, Evans, McCoy, McGee and Jobe, the ferry privileges at Kansas as tenants in common. 9. The jury may find that a part of the plaintiffs are tenants in common with McCoy and a part are not ; but if they so find, they must name who are tenants and who are not." The court gave all these instructions except the seventh.

Various instructions asked by the defendant were refused. In these the defendant sought to put to the jury the question of a dedication to the public in 1839 of the street used as a ferry landing. In reference to certain questions submitted to the court by the jury, the court instructed as follows : " In response to the first question submitted to the court by the jury, the court instructs the jury that the reservation in the plat and acknowledgment filed in April, 1846, did not confer upon any parties the right to land the ferryboat on the north side of the Missouri river, but left the

rights of the parties as to the north side of the river as they were before. In response to the second question submitted to the court by the jury, the court instructs the jury that in assessing the value of the ferry privileges the jury will find what the whole ferry privileges, including the right to land the ferry-boat on both sides of the river, were worth, leaving the court to apportion the same according to their rights, provided the jury find that the plaintiffs or any of them are tenants in common of said ferry privileges with the defendants."

The finding of the jury is as follows : " We, the jury, find that part of the plaintiffs, to-wit, Jacob Ragan, Fry J. Mc-Gee, William Gillis, William B. Evans, since deceased, whose heirs are plaintiffs [naming them], were the owners as tenants in common with the defendant John C. McCoy of the ferry privileges of the ferry across the Missouri river at the town of Kansas from the 1st of May, 1846, until the 12th of August, 1853 ; and so the jury find the first issue for the said plaintiffs Ragan, McGee, Gillis, and the said heirs of Evans, against the said defendant John C. McCoy. And the jury on the second issue find that the yearly value of said privileges was worth seven hundred dollars per year during the said time."

The court made the following finding in addition to that of the jury : " The court finds the following facts not found by the jury and not embraced in the issues submitted to the jury. 1st. The court finds that the plaintiffs Jacob Ragan, Fry J. McGee, and William Gillis, and the defendant John C. McCoy and others, were joint purchasers of the land upon which the town of Kansas was laid out, and that there were in all fourteen original joint purchasers. These facts are averred in the petition, not denied by the answer, and are taken by the court in this finding as true. 2d. The court finds that the defendant John C. McCoy used and kept the ferry and had the same for his benefit and received the entire proceeds of the profits of the ferry privileges of the ferry across the Missouri river, at Kansas city, from the 1st day

of May, 1846, until the 12th day of August, 1853. These facts are averred in the petition, not denied in the answer, and are taken by the court in this finding to be true. 3d. The court finds that neither the said Jacob Ragan, nor Fry J. McGee, nor William Gillis had any right, title or interest in the land on the north side of the Missouri river, where the ferry-boat landed, but the same was owned during said period between the 1st of March, 1846, and August 12, 1853, solely and exclusively by defendant McCoy. 4. The court finds that neither of the plaintiffs demanded of the defendant John C. McCoy any part of the proceeds of the ferry during the time aforesaid before the bringing of this suit, nor has the defendant John C. McCoy tendered to the said plaintiffs or either of them any part of the proceeds of the said ferry during that time."

The court gave judgment upon both findings in favor of Ragan, McGee and Gillis for one-fourteenth each of one-half of the profits of the ferry at seven hundred dollars per annum from 1846 to 1853, and in favor of Evans' heirs for one cent.

*Hovey*, for plaintiffs in error.

I. The plat of 1846 was not competent evidence. It was not acknowledged by the persons asserted by the petition to be the proprietors. It was not signed. The justice does not certify that the persons were known to him. (R. C. 1845, p. 1056 ; p. 221, 222, § 15, 16, 20, 21.) The question asked of the witness Smart was proper and should have been answered. (R. C. 1845, p. 55 ; Ashm. 136.) The first instruction given for plaintiffs is erroneous. Unless the plaintiffs and defendants were all tenants in common, the verdict could not conform to the pleadings. Unless they were all tenants in common, their interests could not be fourteenths. (See 20 Mo. 30.) The third and fourth instructions given were erroneous. (27 Mo. 70.) The latter assumes that an acknowledgment by a part of the proprietors would be a lawful town plat. It assumes that the plat of 1846 was a valid

town plat and lawfully acknowledged. (8 Mo. 710.) So the fifth instruction. There is no evidence of a lawful acknowledgment, and no signing as mentioned in it. (27 Mo. 26.) The sixth, eighth and ninth instructions were erroneous. (See 4 John. 81; 26 Mo. 394; 26 Mo. 393.) So also the instructions given in response to the questions put by the jury. A parol dedication acquiesced in by the owner and used by the public for six or eight years is a complete dedication. (3 Kent, 433, 450.) The facts in evidence show a dedication in 1839. (6 Pet. 431, 728; 9 B. Monr. 202; 8 Dana, 54; 4 J. J. Marsh. 539; 16 B. Monr. 170, 804; 15 Mo. 635; 8 B. Monr. 232; 3 Mo. 330; 7 Ind. 39.) Tenancy in common can not exist without possession. McCoy's possession was sufficient title as against all persons not showing a superior or equal title. (6 B. & Cr. 703; 4 Burr. 2487; 2 Chitt. Bl. 59, 196.) Mere occupancy of the estate by one tenant in common does not give the action of account to another tenant in common, if the estate is susceptible of being occupied by all. (12 Mass. 150; 17 Pick. 24; Addison, Contr. 373; 17 Q. B. 701.) The action for an account is not maintainable without a demand and refusal to account. (9 Mo. 697; 3 Mo. 315; 16 Mo. 525; 19 Mo. 467; 6 Cow. 475.) There was no finding as to the dedication set up in the answer. There was no order to account and no reference. (R. C. 1845, tit. Account; 1 Wheat Selw. 5; 1 Mo. 514; 21 Mo. 149.)

*Sheley*, for defendants in error.

I. A ferry privilege is an incident to lands. The owner may sell the land and reserve the privilege. (9 S. & R. 32; 8 B. Monr. *256*; 2 McLean, 388; 3 Watts, 219; 1 Yates, 167; 20 Wend. 133; 2 Dev. 404; 6 B. & Cress. 703; 3 Term. 142.) The proprietors of Kansas were tenants in common. When they laid out and platted the town in 1846 they remained tenants in common in the reserved ferry privileges. The parties acknowledging the plat of 1846 are estopped to deny it. (8 Dana, 60; 5 Verm. 76; 3 Gill &

Jo. 29 ; 16 Mo. 432 ; 14 Mo. 482 ; 16 Mo. 273 ; 2 B. Monr. 429 ; 5 Cow. 129 ; 4 Cow. 492 ; 4 Johns. 230 ; 3 Mo. 29.) The supposed plat of 1839 was not acknowledged. McCoy's possession was the possession of the company. (3 Dev. 324 ; 25 Wend. 409 ; 3 Mo. 529 ; 3 How. 674 ; 31 Maine, 34 ; 22 Verm. 617 ; 11 Cal. 370.) Although a dedication may have been made in 1839, yet, as the ferry was in existence at that time the ferry privilege was impliedly reserved. (8 Dana, 63.) Although a part of plaintiffs may not be entitled to recover, yet those who are entitled may. (17 Mo. 175 ; 17 Ark. 660.) The deed of the commissioner Davenport should have been admitted.

SCOTT, Judge, delivered the opinion of the court.

This suit was commenced whilst the practice act of 1849 was in force · consequently it should have been conducted according to the provisions of that act. It was an action for the recovery of money, and therefore under the said act was properly triable by a jury. The prayer for a discovery did not the less make it a case to be tried by a jury. We have held that the act of 1849 abolished the bill for a discovery. (Worley v. Bond, 26 Mo. 253.) The case, then, being one for a jury, the court had no right to share its functions and take upon itself a portion of its duties. In cases to be tried by juries, the jury tries all the issues and the court gives the law. If parties waive a jury trial, and the cause is submitted to the court, then the court without a jury finds the facts and declares the law of them. We are speaking of the act of 1849. In this case, indeed, the court seems to have taken to itself the trial of the facts, and put the finding out of the law upon the jury. Whether the plaintiffs and defendants were tenants in common under the facts of the case was purely a question of law.

We will not undertake to say whether the sale in partition was valid or not on account of the deed having been executed by one commissioner only, the other two having died. It appears that the fact of the death of two of the commission-

ers was brought to the knowledge of the court before the deed was perfected, and it is strange that the vacancies in the board of commissioners were not supplied. Why has it not been done since and another deed executed; or, if that is now impracticable from deaths and alienations, why not call upon the general assembly to make valid the first deed? This would not make matters any worse, and it might help them.

In a supplementary answer the defendant set up as a defence the first dedication in 1839 of the street which gives rise to this controversy. If there was an actual dedication at that time, the property could not afterwards be resumed by those making the dedication. There is strong evidence of such a dedication; and the proprietors of the town can not take advantage of their violation of the law in not making the dedication in the manner prescribed by the statute. They may have subjected themselves to a penalty, and yet in favor of third persons their act will be binding. (The City of Hannibal v. Draper, 15 Mo. 638.) If this suit is again tried, it will be determined whether there was a dedication in 1839.

The plat of April 30, 1846, is not in the record. We can, therefore, give no opinion as to its conformity to law. But we do not see, in the words of the statute, any foundation for the objections that it was not signed by the proprietors, and that the justice did not certify, in the acknowledgment taken, that they were known to him to be the persons they represented themselves to be.

We see no error in the ruling of the court in refusing permission to the witness to testify as to the advantage of the ferry to the town at large. As the plaintiffs claimed a sum of money, which they alleged was due them, we do not see how that circumstance could affect the amount claimed.

The important question in this case is whether, admitting that the plaintiffs and defendants are tenants in common of the ferry privilege, or street, or space of ground where the ferry was kept, the plaintiffs can maintain this action? It is

said that if one tenant in common occupies the whole estate, without any claim on the part of his co-tenants to be admitted into the possession, and without hindrance by him of such possession, he is not liable to his co-tenants in an action of account. (Coke Litt. 200, *b.*; Bacon's Abrid. tit. "Joint Tenants," letter L.; Sargent v. Parsons, 12 Mass. 149; Woolever v. Knapp, 18 Barb. 266.) The modern English authorities are to the same effect. (Henderson v. Easom, 9 Eng. Law & Eq. 337.) Our statute giving an action of account to joint tenants and tenants in common against each other is similar to the statute of New York and the statute of 4 Anne. The tenant is only liable as bailiff or receiver, and this relation can only arise by contract. Each tenant is entitled to the possession, and may enter and enjoy if he will. As each tenant is entitled to his share of every part of the undivided premises, one tenant can not gain an exclusive right to any part of them. He may enter and enjoy a portion less than his share, yet the other tenants will be entitled to their share of that portion, as each tenant is seized of his portion of every part of the undivided premises; so that if the law were otherwise, one tenant might refuse to enter, and the other could not enjoy any portion, even one less than his share, without making himself liable to the others for a share of the profits, and that without regard to the fact whether the occupation was beneficial or otherwise to the premises. Of course, if one co-tenant ousts another, he will be liable in an ejectment, or subject himself to the law of forcible entries. But where the land is free to all, and each may enter if he will and enjoy his rights undisturbed, there is no reason in compelling him, who does enter, to pay rent to him who neglects or obstinately refuses to do so.

But how much stronger is the case before us than the one put? Here are tenants in common of a parcel of land on which a ferry may be kept. One of them obtains a license and actually keeps a ferry, an employment that nowise lessens the value of the common property, but on the contrary heightens it. Each of the tenants may do the same thing.

LAW SCHOOL LIBRARY

They neglect it, however, and yet would enjoy the profits of him who does. Licenses to keep ferries continue for one year. It does not appear that the license granted the defendant has obstructed the enjoyment of the right of the others, or but that redress might have been had if application had been made to the proper tribunal. The right to keep a ferry is a personal privilege sold to the person obtaining the license, and is not transferable. (Stark v. Milber and others, 3 Mo. 330.) Suppose two were tenants in common of a private stream, which afforded as many fish as both could take, and one of them made the taking of fish his business, from which he reaped a profit, would the other be permitted to share that profit? It may be that the expenses would be diminished, and thereby their profits increased by uniting in the employment; but if they will not do this, and one is at all the expense, why should they share the profits, when the employment has not at all affected the value of the common property?

As the plat of 1846 is not before us, we will hazard no opinion as to the effect of it between the proprietors.

As we suppose this suit was brought to try the right of the parties to the ferry privilege, the cause will be remanded so that the parties may amend their petition in a way that their action may be adapted to that end.

The mode of trying the cause, and the error in the instruction in relation to the dedication in 1839, are sufficient to reverse the judgment.

Reversed and remanded. The other judges concur.