DANIEL B. BIRD, ET AL., APPELLANTS, VS. WILLIAM C. BIRD, ET AL., RESPONDENTS.

1. Crops grown upon the common estate by one tenant in common of the land, vest in and become the property of the occupying tenant. The other co-tenants have no property in such crops. In cases of exclusion, where there is a liability of the occupying tenant, it extends only to an accounting for what he has received beyond his first share. There is no property or lien in the produce.

2. As between tenants in common it is within the power of the chancellor in decreeing partition to direct the commissioners to assign the share containing the homestead to the surviving son, before that time occupying the homestead, rather than to surviving grandchildren. In such case, where the surviving son can retain the property, this action of the chancellor will not be disturbed. If, however, it is established that the assignment of the homestead will result in its going to his creditors, the homestead should be given to the grandchildren, as they should be preferred to creditors of the son.

Appeal from Jefferson county, Second Judicial District. The opinion of the court contains a statement of the case.

*Pasco* and *Scott* for Appellants.

From the original bill filed in this cause it will be seen that all the complainants were infants, and that they were co-tenants of a certain estate—"Nacoosa"—with the defendant, W. C. Bird. That defendant, W. C. Bird, had entered

upon said estate in 1867, and been in possession thereof since that time, receiving to his own use all rents, issues and profits of the said estate. The bill prayed for a partition of the common estate, and an account of the rents, issues and profits thereof.

Afterwards, to-wit: June 3d, 1873, complainants filed their supplemental bill against the original defendant, Bird, and against Earle & Perkins, commission merchants. In addition to the matters set up in the original bill, it is charged that the said Bird attempted to mortgage the entire common estate, and the annual crops, year after year, to Earle & Perkins.

Defendant Bird did not answer, or demur, or plead to the supplemental bill, and a decree *pro confesso* was taken against him.

Defendants Earle & Perkins answered said bill, admitting the statements of complainants' bill, and that they had received the crops of cotton mortgaged to them by W. C. Bird, and had applied the proceeds of the same to the payment of the indebtedness of said Bird to their said firm for advances made by them to said Bird.

On December 13th, 1873, the court made an order appointing commissioners to divide and partition said common estate, and a referee was appointed to state an account against defendant Bird for rents, &c., during the time he had occupied the common estate.

The commissioners met, valued the lands, divided them into three equal parts, upon one of which was situated the old homestead of the family, and certain improvements made before defendant Bird went into possession of it. Defendant Bird appeared before the commissioners and claimed as a right that that part of the common estate whereon the old family homestead and improvements were situated, should be set apart by the commissioners to him. The majority of the commissioners differed with the said defendant Bird and with the other commissioners, and proceeded to

partition the said lands by drawing lots for the several parts; and upon drawing the said lots, the part desired by defendant Bird fell to the children of the oldest son, D. B. Bird, the brother of defendant W. C. Bird. The commissioners, having discharged their duty, reported their action, and filed their report of the partition February 19, A. D. 1874; exceptions were filed to the report of the commissioners March 18, 1874, and amended exceptions 30th of May, 1874, to the effect that the commissioners should have divided the land according to the wishes of the said defendant Bird, and should have set apart to him the homestead and improvements.

The referee's report was filed on July 30, 1874, with the testimony taken by him, and an account showing the amount due by defendant Bird to complainants on account of rents of said common estate, up to and including the year 1873, with interest to August 1, 1874. Exceptions to this report were filed on the 28th of August, 1874. On December 1, 1874, defendant Bird filed a petition to set aside the report of the commissioners, (although his exceptions to said report were then on file,) and prayed in said petition that the court would order a new partition of said lands, at which that portion upon which the old family homestead and improvements are located should be set off to him, and alleging as a reason for this, that he would otherwise be left without a home for his family. The infant complainants answered this petition, denying that defendant had any superior equity to theirs; that he was an adult in possession of their property, and enjoying the rents, issues and profits of the same. That their co-tenant, defendant Bird, did, at one time, have a home of his own, given him by his parents, which he has mortgaged and which has been sold under a decree of foreclosure. They also aver, and it is not denied or disproved, that defendant Bird's interest in the common property is mortgaged to Earle & Perkins for more than its

·value, and that if the portion he desired should be allotted to him, he could not get the benefit of it.

On the 26th of December, ———, the court made an order setting aside the report of the commissioners, and also setting aside the report of the referee, and a new reference was ordered.

The court also held that Earle & Perkins could not be held responsible to .complainants for any part of the proceeds of the crops received by them from W. C. Bird. The court also made an order removing the commissioners before appointed and appointing three others, with instructions to set apart to defendant Bird that part of the estate he desires, i. e., the family homestead and improvements, and part adjoining thereto.

We claim that the court erred in setting aside the commissioners' report, in setting aside the report of the referee and in deciding that defendants, Earle & Perkins, were not liable to account with complainants for any part of the proceeds of the crops raised by Bird on the infants' estate, and turned over by him to them in satisfaction of a prior indebtedness of said Bird to them.

1. The commissioners' report should have been confirmed. The report of commissioners appointed to partition common property, should be disturbed only upon grounds that would justify the judge in setting aside the verdict of a petit jury. It should even be regarded with more consideration. See Freeman on Co-tenancy and Partition, § 525; 4 Dess. Ch. R., 85; 8 Ves., 143; Thomp. Dig., 384–5; 19 Tex., 567; 2 Dan. Ch. Pr., 1134; Freeman, 632, § 522, note.

The statute of Florida, Thompson's Digest, 384–5, has fixed the principle, as it seems to us, in all cases of partition, by declaring that in partition between co-parceners, no one shall have any advantage over the others. This will require the use of the lot. But defendant Bird, if he was, entitled to any preference in the partition, which he is not, waived it by failing to set it up by way of answer to the

original bill or by cross-bill. After having had his chance. to obtain the part he desired by the lot, it would be inequitable to allow his petition for another partition of the lands. See Freeman, § 449.

There is no equity in the claim set up by the defendant, W. C. Bird, to have any particular portion of the common estate set apart to him. It does not appear, nor is it a fact that W. C. Bird is, in any position with respect to this property, (the homestead tract,) as would render the refusal of the commissioners to assign it to him inequitable; on the contrary, we claim, that under the circumstances, it would be inequitable to give him any advantage in the division of this common property. The said Bird does not claim to have improved this portion of the estate, and on the contrary, it may be inferred, and is a fact, that from its long use by him, (without rent,) it has greatly deteriorated in value; besides all this, we claim the said W. C. Bird is in the position of a trustee, who has grossly abused his trust. In 1867 he entered upon the common estate while his co-tenants were infants, claimed the estate as his own and did all in his power to defeat the interests of his co-tenants, and is now in a position to expect from a court of equity a severe reckoning for the abuse of his trust, rather than to demand partiality as a favored suitor. When it is remembered that it is charged, and not disputed, that defendant Bird is an insolvent, and the very interest in the common estate is mortgaged for more than its value, and the infants without any hope of remuneration for the use by him of their property for so many years, a feeling of surprise is awakened that a court of equity should be petitioned to set apart to him the only part of the common estate, which, in consequence of its being improved, could be of value to the infants. "Any person entering upon the lands of infants is regarded in equity in the light of a receiver, guardian, bailiff or trustee of such infants, and he will be held to a strict account." See Story's Eq. Jur., § 511, 1356; Perry

on Trusts, § 603; 8 H., 531; 3 Atkins, 304; Story's Eq., § 1352; 2 P. Williams, 112; 5 Madd. R., 77; Story's Eq., 1341; 8 Paige, 152; 2 P. Williams, 103; John. Chy., 49; 6 Paige, 366; 10 Ves., 524, 378: 7 Term R., 309; 6 Ves., 892, 542; 27 Beav., 508; 8 Id., 250.

These cases all illustrate the peculiar vigilance exercised by courts of equity over the estates of infants, especially when they are wards of the court, as these infants became when they commenced these proceedings to assert their rights to this property.

Again: The court erred in setting aside the report of the referee. It is not denied that any tenant in common entering upon the common property, cultivating, using and enjoying the same, exclusive of his co-tenants, is bound to account with his co-tenants for the rents, issues and profits of the common estate received by him over and above his just and proportionate share. See 16 Gratt., 21; 19 ib., 95; 6 Ves., 498; 2 Stock. Chy., 98; 5 Madd. Chy., 363; 44 Vt., 200; 13. Ill., 107; 47 ib., 460; 2 Hill Chy., 111; 3 Nevada, 531; Story's Eq., § 655; 1 Lomax Dig., 508.

Defendant Bird's responsibility to the infant co-tenants as trustee for them, is based, not only upon the fact that he, an adult, entered upon their property and appropriated the whole proceeds to his own use, but also upon the fact that his original entry was an ouster of his co-tenants. His entry was not in the character or with the intent to occupy the property as co-tenant with the infants, but with the intent to retain possession of the whole estate as his own separate property. This fact appears from his the said Bird's answer to the original bill, in which he distinctly claims the entire estate as his own by virtue of the original agreement between Daniel Bird, his father, and William Bellamy. It is true he afterwards abandoned this position; but his setting it up at all explains the character of his original entry, and holding for several years, and that he was from the first a disseisor of his infant co-tenants, and as such, a

trustee in equity for them. That he held this land adverse-
ly in intention and fact, is also shown by the fact of his
mortgaging the entire property to the defendants, Earle &
Perkins, representing at the time to them that it was his
own property, as seen in the answer of the said Earle &
Perkins to the supplemental bill of complaint. See 27
Tex., 328; 4 Mason C. C., .330; 4 Mo., 161; 3 Watts,
77; 20 Ark., 359; 2 Gr. Ev., § 318; 7 Wheat., 60, 121; 10
Barr, 224; 44 N. Y., 572; 15 Ala., 363; 8 Mou., 177.

We come now to fix upon Earle & Perkins the responsi-
bility of trustees of these infants of so much of these crops
mortgaged to them by said W. C. Bird, in payment of his
individual debts to them. We admit that they are entitled
to be re-imbursed to the extent of the advances made
to said. Bird to defray the reasonable expenses of the
plantation, but that they are trustees for the infants for
two-thirds of the balance remaining in their hands, which
was mortgaged to them by Bird to pay an antecedent debt.
We have shown that Bird is a trustee of this property for
the infants. We now show that defendants Earle & Per-
kins are also trustees for the infants, and accountable to
them as such for two-thirds of the net proceeds of the sale of
crops mortgaged to them by defendant Bird while occupy-
ing the common estate. The answer of Earle & Perkins
shows that defendant was indebted to them, and in Jan-
uary, 1869, executed to them a mortgage of the entire
common estate, and all the crops to be raised thereon. That
they received these crops for several years while this suit
was in progress, it having been commenced in July, 1869,
and sold the same and applied the proceeds thereof to Bird's
indebtedness to them. Earle & Perkins are then in the
position of purchasers, with notice of the rights of the in-
fants, (the record of the deed of the land and the pendency
of this suit being constructive notice.) The principle that
a person purchasing trust property from a trustee with no-
tice of the trust in consideration of the past indebtedness of

the trustee to the purchaser, is bound by the trust, and will himself become by such purchase a trustee of the property purchased, is too old and well established to require a citation of authorities to sustain it. See the authorities cited in the appeal of D. B. Bird, *et al.*, vs. Earle and Perkins, argued at the present term before this court.

*George P. Raney* and *J. W. Malone* for W. C. Bird.

I. The court committed no error in setting aside the partition made by the commissioners.

It was made by but two of the commissioners. These were appointed as required by the statute, and only two acted. It was necessary that all three should act. Thomp. Dig., 384–5; Perry on Trusts, Sec. 411; 4 N. H., 53; 11 Barbour, 527.

It was the duty of the commissioners to assign to the respective tenants in common, taking the heirs of D. B. and P. B. Bird, respectively and collectively, a particular part, and not to have resorted to casting lots, except in the last extremity. 2 Vol. Leading Cases in Equity, p. 642; 1 Md. Chan., 223.

II. The order appointing new commissioners, and the instructions therein contained, were proper and legal.

In making partitions, courts of equity administer relief "ex equo et bono," according to their own notions of general justice and equity between the parties, and will assign to the parties respectively such parts of the estate as would best accommodate them, and be of most value to them, with reference to their respective situations in relation to the property before the partition, and will give special instructions to the commissioners. 1 Story Juris., Sec. 656–7; 1 Barbour, 509; 4 Halstead's Chancery, 557–8; 1 Leading Cases in Equity, 641–2; 4 Barbour, 228; 1 McMull. Eq. Rep., 63; 11 Texas, 385; 1 P. Williams, 446, cited in 2d Cruise's Digest, m. p. 539–40; 1 Green., 345; 7 B. Monroe, 285; 7 J. J. Marshall, 148; 7 Dana, 176.

The court, in directing the commissioners to give W. C. Bird that part upon which the homestead, etc., are, did no wrong or injustice to any of the other tenants. Being the only surviving son, and having lived there, and raised his family there, and being without any other home, and insolvent, it is but right that the homestead should be preserved to him, if it can be done and the representatives of the deceased brothers preserved equal values. He is benefitted thereby, but they are not injured. If the homestead was assigned to either set of children, it would afterwards have to be given or assigned to some one of them on partition. All could not keep it as a homestead.

The report of the commissioners is sufficient to satisfy the court that the property can be divided in three equal portions. If this can be done, why deprive this respondent and his family of a home? Why turn him out upon the world without shelter? Why not give him a shelter, when, by doing it, no one is harmed? The record shows the plaintiffs have homes and protection under the roofs of their mothers.

III. The master's report was erroneous, and should have been set aside, for the following reasons:

1. The report fixes the rental of the lands mentioned therein, for 1870, 1871, 1872 and 1873, at the rate fixed by the commissioners for the years 1868 and 1869, whereas there is no testimony as to which was a proper amount of rental for said years 1870, etc., nor an average rental.

2. There is no testimony to sustain the rental decided upon by the master for 1870, etc. It is merely the master's personal opinion.

3. There was no testimony to sustain the deduction or discount on scrip in payment of taxes.

4. The master has not found consistently with the testimony and as to the value of the improvements.

5. The report is not consistent with the order or the testimony.

IV. The restraining order of November 27, 1874, was improper, and should not have been granted.

The petition shows no title or interest in the crops, or any lien upon the same, by judgment, execution, or otherwise. It does not even allege fraud. The allegation of insolvency is not sufficient. High on Injunctions, Secs. 25, 26, 21; 2 Johns. Chan., 144.

The following authorities show that the complainants, as tenants in common, had no claim upon the defendant, Bird, for any share of the crops, either by the common law or the statute of Anne. Such is the current of authority in this country and England: 9 Eng. Law and Equity, 337; 40 Me., 56; 2 Gray, 424; 12 Cal., 414; 18 Barbour, 265; 6 Gray, 118; 12 Mass., 153.

Even admitting the doctrine laid down in Virginia, and one or two other States, which is against the current of authority, there is nothing in the pleadings showing that Bird has received more than his just share or proportion of the whole crop. 2 Gray, 425; 14 Ga., 429.

If, on the other hand, it is right to claim a rental from Bird, either for the year 1874 or other years, and to restrain the disposal of the crop of 1874 so far as to make it answer this claim of rent, or both, there is no ground for equitable interference by the court. The partition of the complainants, and their additional or supplemental complaint, and the answer of Bird to the additional complaint, show that there was no ground for granting the restraining order. They were mere general creditors, if they had any claim, and have and show no equity. 2 Johns. Chan. 144; High on Injunctions, Sec. 7; 3 C. E. Green, 26; 9 Gill & J., 472; 13 Cal. 190.

*Papy & Raney* for Respondents.

A trust is defined to be an obligation upon a person, arising out of a confidence reposed in him, to apply property faithfully and according to such confidence.

Trusts are divided into simple and special trusts, but we have no need to consider either of these divisions in this case.

In reference to their creation, trusts are divided into express trusts, implied trusts, resulting trusts, and constructive trusts.

Express trusts are created by instrument, or arise out of express contracts that point out the property and purposes of the trust.

Implied trusts are trusts that courts imply from the words of an instrument where no express trusts are declared, but the courts imply that it was the purpose to create a trust.

Resulting trusts are trusts that courts presume to arise out of the transactions of parties, as where one man pays the purchase money and the deed is taken in the name of another. The presumption in such cases is that a trust was intended.

A constructive trust is one that arises when a person, clothed with some fiduciary character, by fraud, or otherwise, gains some advantage to himself.

This classification and definition will be found in Perry on Trusts, p. 13. We give them here, in order that we may, when we come to consider this case, determine whether it falls within any one of the divisions of the subject, or whether it comes under neither, as we confidently affirm.

It is alleged in the bill that Earle & Perkins are trustees of these plaintiffs, and are accountable to them for the proceeds of the cotton which were applied, as agreed between the parties, in payment of the advances made by them to W. C. Bird to make the crops, and that this trust arises out of the facts charged, and which are herein briefly set forth.

We will not consider the first sub-division of trusts, hereinbefore stated, because there is no pretence of an express trust in this case. There being no express trust, can the case be brought within the second sub-division of implied

trusts? Clearly not, because there is no instrument or contract of any character to which Earle & Perkins are parties, from the terms of which a trust of any character can be implied. There is no allegation of the sort. There is nothing in this case—no contract, agreement, or transaction—from which the court can imply a trust, so far as Earle & Perkins are concerned, or infer that it was the intention of the parties to create a trust.

Neither can the case be brought within the third sub-division, and be said to be a resulting trust. There is no element in the case from which a resulting trust can arise, and we will not consider it further.

All of these three classes of trusts come within the intention or supposed intention and contemplation of the parties, and, as we have said, there is nothing in this case which can bring it within either.

But the fourth sub-division, viz., constructive trusts, are not within the intention of the parties, but they are thrust upon parties contrary to their intention and against their consent, and it is under this latter sub-division that we presume it is sought to bring the case.

It is said that constructive trusts may be divided into three classes, to be determined according to the circumstances under which they arise. Perry on Trusts, 137.

1. Trusts that arise from actual fraud practiced by one upon another.

2. Trusts that arise from constructive fraud, as where a guardian purchases from his ward, or a trustee from a cestui que trust. Though there may be no actual taint in the transaction, yet, on account of the inconvenience or danger of allowing such contracts to be made, courts of equity construe such contracts to be fraudulent, prima facie, and they construe a trust to arise therefrom.

3. Trusts that arise from some equitable principle, independent of fraud, as where an estate has been purchased

and the money paid, but the deed has not been taken, equity will raise a trust by construction for the purchaser.

Was there any actual fraud in this case, from which a trust can arise? There is no pretence of this, and we need not consider this branch of the subject.

Can the case be brought under the second class of constructive trusts? The defendants, Earle & Perkins, occupied no relations to the plaintiffs, made no contracts with them, nor did they deal with their estate, nor knowingly with any person occupying a fiduciary relation to them, or, by any act of theirs, devise an advantage to themselves which a court of equity would or could condemn. Indeed, they have not even been reimbursed for their outlay, and have not touched the property of the plaintiffs. No circumstance or fact of imposition is even suggested from which a trust can be construed, or from which a trust can arise from any equitable principle independent of fraud or imposition; and if no equitable principle applicable to the facts in this case, independent of fraud, can be invoked in support of the proposition that Earle & Perkins are trustees, it results that the case can fall under neither of the classes of constructive trusts mentioned.

It becomes manifest, then, that Earle & Perkins are neither express, implied, resulting, or constructive trustees, and therefore no trustees at all, and in no way liable to account to the plaintiffs.

But, it may be said that W. C. Bird was a trustee for the plaintiffs, and that Earle & Perkins dealt with him in that character, and are therefore accountable to the extent that he may be alleged to be accountable.

1. We affirm that even if W. C. Bird was a trustee, as alleged, that Earle & Perkins, though dealing with him with full knowledge of his alleged fiduciary character, are in nowise accountable to the plaintiffs.

2. That W. C. Bird himself was in no sense a trustee for the plaintiffs.

But, first assuming he was a trustee, it in nowise follows that, in endeavoring to make the trust property productive, he could not incur a debt payable out of the crops to be raised by the very means furnished by the creditor. Let it be remembered that the subject of the trust was land alone; that, to make it productive of income, other elements were necessary, such as labor, mules, teams, agricultural implements, provisions, supplies of various kinds, and the labors, attention and supervision of W. C. Bird himself. As trustee, supposing him to be such, it might become, and it did become, necessary for him to obtain money to enable him to carry on planting operations. Without it the land would yield nothing to himself or the cestuis que trust. He was justified, therefore, in law, to create a debt secured on the crops to be made; and even without such security, a court of equity would subject the crops or their proceeds to the payment of the creditors for the advances made. We may admit that he could not encumber the portion of the land itself belonging to the cestuis que trust, but he had the right to pledge the crops to obtain money to enable him to cultivate it. No injury results to the cestuis que trust, because they would be only entitled to the surplus after the debt is discharged. The law does not give them the advantage of taking from the creditor the very money advanced. Such would be the case if the claim set up by the plaintiffs here is sustained; for, until the creditor is paid, nothing has proceeded from the land to which they would be entitled. It would seem to be scarcely necessary to cite authorities for so simple and familiar a principle.

But W. C. Bird was in no sense a trustee. What has been hereinbefore affirmed in regard to the alleged trusteeship of Earle & Perkins, and the doctrines advanced in connection therewith, applies with equal force to the assumed trusteeship of W. C. Bird.

It may be said that Bird must be held to be a trustee be-

Bird et al. v. Bird et al.

cause he was in possession, cultivating the land, two-thirds interest in which belonged to the plaintiffs. We reply that he was in possession in his own, and not in right of others. He was at least a tenant in common, and, as such, was entitled to possession in his own right, and, in occupying, did no more than he had a right to do on his own account. His entry was not a trespass, and his holding was not a wrong. By the common law, the occupancy of the premises by one tenant in common did not entitle the co-tenant to call him to an account. The statute of 4 Anne rendered him liable to account for receiving more than his just share, but nowhere is it said that he occupies the relation of trustee. The action against him is a common law action, and not grounded upon a trust.

In some of the States a tenant in common, occupying and cultivating more than his share, and deriving profits, may be held accountable, but not as upon a trust. The general doctrine held, ever since the statute of Anne, is, that occupancy and taking crops do not give the right of action. There must be a reception of money from a third party, and for the excess over the just share of the tenant receiving it is the action allowed. In most of the cases in which the question has come up, such has been the ruling. And it has been held that the statute of Anne only applies to cases where one tenant in common received from a third person money, or something else, to which both co-tenants were entitled by reason of their co-tenancy, and retained more than his share. See 12 Cal., 414; 9 Eng. Law and Equity, 347; 6 Gray, 118; 12 Mass., 152.

WESTCOTT, J., delivered the opinion of the court.

The appeal in this case is from two decrees of the Chancellor—one final, the other interlocutory. The final decree, from which the appeal is taken, dismisses the bill as to the defendants, Earle & Perkins, and this action is the general error assigned as to that decree. The interlocutory de-

cree, which the appeal brings here for review, directs the commissioners appointed to partition the lands to assign to defendant, W. C. Bird, in the partition prayed for, that portion of the land which embraces the homestead of the family; directs an account to be taken of the rents and profits of the land which has been in the possession of W. C. Bird, and revokes the order restraining Bird from disposing of the crops.

Defendant, W. C. Bird, takes no appeal from that portion of the interlocutory decree which directs an account to be taken of the rents and profits received by him, nor do the appellants here present that question. It is, therefore, not before us for consideration.

The two general questions presented are: Was the decree dismissing this bill, as to Earle & Perkins, error? Was the interlocutory decree erroneous in so far as it directed the commissioners, in making the partition, to assign to W. C. Bird the portion upon which was located the family homestead, and in so far as it restrained W. C. Bird from disposing of the crops?

Upon the death of Daniel Bird, in the year 1867, the plaintiffs, children of Daniel B. Bird, and grand-children of Daniel Bird, became entitled to one-third interest in a tract of land in Jefferson county; the plaintiffs, children of Pickens B. Bird, and grand-children of Daniel Bird, became entitled to one-third interest; and the defendant, W. C. Bird, the son of Daniel Bird, became entitled to the remaining third. They were tenants in common.

At the death of the grandfather, W. C. Bird was in possession of the entire tract, and has so remained up to this time, with the exception of the year 1874. As to this year, the plaintiffs allege an entire and exclusive possession, while Bird answers that he has cultivated only a part for that year, and that he has been willing for the others to occupy. Up up to 1874, it is admitted that he occupied and used the entire tract, appropriating the rents, issues and profits

thereof.   During this period Earle & Perkins, commission
merchants, advanced to him moneys, taking mortgages upon
his crops, from year to year, to secure the repayment of the
sums so advanced; and the defendant, Bird, in compliance
with his contract, turned over his crops annually to Earle &
Perkins, who sold them and applied the proceeds to the
payment of the indebtedness of Bird to them.

The original bill was filed in 1869 against defendant, W.
C. Bird, and its prayer was for a partition and account of
the rents and profits.   In June, 1870, the plaintiffs agreed
to sell their interests in the land to the defendant, and the
court, after ascertaining the values in accordance with the
agreement, on the 27th day of May, 1872, appointed a
referee and directed a sale upon the terms agreed upon.
On the 10th of May, 1873, the referee reported to the court
a failure on the part of defendant, Bird, to comply with
the agreement of the sale, and requested further instruc-
tions, or that he be discharged.   The court took no action
upon this report.

On the 17th day of February, A. D. 1873, defendant,
Bird, executed a mortgage upon all the crops of cotton,
corn and fodder to be raised by him during that year.
This mortgage was conditioned to pay advances for the
crops for that year, and to apply any remaining balance to
the debt due them by him for antecedent advances.

It will be seen that this mortgage was given while Bird
was in possession, under a contract of purchase from the
plaintiffs, which had been agreed to by them, and which
had been approved by the court.

A receiver was appointed of these crops of 1873, by the
court, in another suit, wherein Earle & Perkins sought a
foreclosure of their mortgage, and the proceeds of the sales
thereof are now under the control of the court.

Under this state of facts, the claim now here made is,
that defendant, W. C. Bird, having controlled the interests
of the infant plaintiffs in this land since 1867, is liable to

them as trustee or guardian, and that defendants, Earle & Perkins, having received all of the crops raised thereon, are likewise liable as trustees, and that they should be decreed to account therefor. The precise question, therefore, which we have to determine, is: Is the mortgagee of crops grown by one tenant in common of the land, who has possession of the entire estate, responsible as trustee to other infant tenants in common of the land with the mortgagor, such mortgagee having received the crops and appropriated the same to the payment of his mortgage debt?

Appellants insist that the infant tenants in common had a property and title in the crops grown by their co-tenant to the extent of their interest in the land, and invoke in their behalf the familiar principle that when a person enters upon, or takes possession *of the property* of an infant, a court of equity will consider such person entering as guardian or trustee, and will decree an account against him. That such is the law cannot be questioned. 31 Eng. Chy., 505; 8 Fla., 153. But is it true that infant tenants in common of land are tenants in common of the crops produced thereon by their co-tenant, through a sole use and occupation of the common estate?

In Coke Litt., 200, b., the common law upon the subject of tenants in common is thus announced: "If one tenant in common maketh his companion his bailiff of his part, he shall have his action of account against him. But although one tenant in common, without being made bailiff, take the whole profits, no action of account lies against him."

It was manifestly unjust to permit one tenant in common thus to take the whole profits of the common estate without accounting, and it was the purpose of the statute of 4 Ann, Ch. 16, to correct that evil. That statute, which is in force in this State, enacted that an action of account shall lie by one tenant in common against another who has *actually received more than his share of the profits.*

Under the statute of Ann, it was no longer necessary that one tenant in common should take the profits as bailiff by appointment to make him responsible. It was only necessary that he should receive more than his just share of the profits. By this act, and without appointment by his co-tenant, he became bailiff, and was responsible for what he actually *received* beyond his just share.

The English courts, however, held that there was not a *receiving* within the meaning of the statute in cases where one tenant in common had enjoyed more of the benefit of the subject or made more by its occupation than the other, and restricted the statute to cases only where one tenant in common receives money, or something else, from *another person*, to which both co-tenants are entitled by reason of their being tenants in common, and in proportion to their interest as such, and of which the one receives and keeps more than his just share according to that proportion. Mere occupancy by one tenant in common, under this decision, involved no liability to account to another tenant in common. These are the views announced by Baron Parke in 9 Eng. Law and Eq., 339.

The same view has obtained in the United States, in the States of Massachusetts, (12 Mass., 156,) California, (12 Cal., 422,) New York, (18 Barbour, 265,) Kentucky, (7 J. J. Mar., 139,) Maryland, (30 Md., 126,) New Jersey, (3 Stock., 404,) and Missouri, (29 Mo., 366.) A different doctrine has prevailed in the States of Virginia, (16 Gratt., 21, 52,) Vermont, (44 Vmt., 347,) South Carolina, (1 McMullin, 69,) and Georgia, (14 Ga., 436.)

In these States the occupying tenant has been held responsible for what he has realized beyond his just proportion, and has been sometimes charged with a yearly rental valuation.

Where there has been an ouster of one tenant in common by another, or a use of the whole property, accompanied by an exclusion, then an account is decreed. 30 Md.,

126; 44 Vt., 348; 27 Ind., 52; 22 N. J., 85; 28 Iowa, 527.

After a careful examination of all the authorities upon this subject cited by the appellant, as well as many more which we have consulted, we can find no sanction for the view that the plaintiffs had any *property* in the products raised by defendant, Bird. Even where there is a liability, it is a liability to account for rents and profits received as distinct from a liability in an action for conversion of the property, or other like action based upon a right of property in the plaintiff. Each tenant in common has an equal right of entry and possession. The possession of one is, in contemplation of law, the possession of the other, and to rebut such presumption, an actual ouster must be shown.

The title and property in the crops raised upon the land occupied by the one tenant in common vest in him. He can mortgage and sell the entire crop, and if it is gathered before partition, the crop is his property. These crops have been the result of his separate occupation, the use of his labor, skill and industry. The crop of 1873 was made during an occupancy by consent of the plaintiffs, and under the sanction of the court. Bird, having received advances from Earle & Perkins under these circumstances, their mortgage upon the crops gathered, and the proceeds of which are now under the control of the court, is good as against the claim of property urged by plaintiffs. As to the crop of 1873, Bird was in possession by their agreement, and if plaintiffs had disturbed his possession, they would have been trespassers. They have no property in these crops. A growing crop is part of the freehold. Had plaintiffs obtained partition while the crops were growing, they would have been, as against Bird, entitled in severalty to such part as was growing upon the land assigned them. 4 Met., 415; 4 Kent, 370. Whether this would have been the rule as against the merchant making advances, through which the crops were raised, it is unnecessary here to enquire, as there has been no such partition.

Our  conclusion  upon  this branch  of  the  case is,  that neither Bird nor  Earle & Perkins, in appropriating the crops raised  upon  the  common  estate,  entered  upon  or  used the property  of an  infant ;  that the title and  ownership  of these crops  was  in  the  occupying  tenant, subject  to  liability  to an account,  if his  possession  was  adverse and  exclusive,  or  the result  of  ouster.

The  claim that either  Bird or  Perkins held the legal title to these crops as trustee,  or  that  they were  in any manner trustees, cannot  be  entertained.   If Bird  had  the  right  of property  in the  crop  as an incident  to his right of entry and possession,  labor  and  cultivation,  then  it  is impossible that he  can  be  a  trustee  for  the benefit of others  in  property  in which  he  has the  entire,  the  sole  and  exclusive  property himself,  unless  one  who  has  the  absolute and  unqualified ownership  of  a  chattel can  be  the trustee of another as  to that chattel,  a proposition  so  manifestly  erroneous, that it needs only  to be mentioned to perceive its error.

In a case  of precisely  similar character  to  this in many respects,  and where infants  were plaintiffs, the court of  appeals of South Carolina  held expressly that defendants occupying  the relation that Bird  does in  this case to the plaintiffs,  could not be regarded as trustees of the complainants. 1 Speer's Eq. Cas., 264.

If  Bird cannot be so regarded, as a matter  of  course his mortgagee for value, with knowledge of the state of his title, cannot be treated as a trustee.

The  bill as to Earle & Perkins was  properly dismissed. Plaintiffs had neither  equitable nor  legal right as against them.  If they had any right against Bird, it did not extend beyond a right to an account ; there was  neither lien nor property in the crops  raised by his  labor  and occupation.

The next and only remaining  question  presented by this appeal is, was the  interlocutory decree erroneous in so far as it revoked the restraining  order of  November 27, 1874, and in so far as it directed the commissioners in making the

partition to assign to W. C. Bird the portion upon which was located the family homestead?

The order of November 27 restrained Bird from disposing of the crops made by him. He alleges in his answer that he did not, for the year 1874, cultivate more than one-third of the land. He swears positively that he did not exclude his co-tenants. As to the other crops the plaintiffs we have seen have no property in them or lien thereon. We can see no ground for the restraining order. It was properly revoked.

The next question is as to the matter of the partition.

The power of the chancellor over the entire subject cannot be denied. He cannot be bound against his own views of right, and in the exercise of his general discretion, by the action of the commissioners. And while it is unquestionably true, as a general rule, that the chancellor should adopt the action of parties appointed by himself to take testimony, inspect the lands, and after consideration of the entire subject, to act; still there is no absolute rule making it his duty so to do. Under the statute he has power to remove the commissioners, and the whole matter is one of judicial discretion with which this court will not interfere, unless in a plain case of wrong and injustice. It is the general doctrine prevailing in appellate courts that they will not, except in plain cases, interfere with such discretions. Except as is otherwise provided in the statute, the chancellor had all the powers of a court of equity over the subject. The court is invested with all the cumulative powers created by the statute, and retains all chancery attributes except as otherwise provided by the act.

It cannot be denied that it was within the power of the court to direct the commissioners to assign to Bird that part of the land upon which was situated the homestead. Mr. Justice Story says: "The court should assign to the parties respectively such parts of the estate as would best accommodate them and be of most value to them with refer-

ence to their respective situations in relation to the property before the partition." Nor will courts of equity, in making these adjustments, "confine themselves to the mere legal rights of the original tenants in common, but will have regard to the legal and equitable rights of all other parties interested in the estate, which have been derived from any of the original tenants in common."

We cannot see that the plaintiffs, either the children of Daniel B. Bird or of Pickens B. Bird, stand in any such relation to the homestead in this cause as would induce us to control the discretion of the chancellor, and direct its assignment against his judgment to one or the other of them, except upon one hypothesis. If the fact be that the allotment of the homestead placed to W. C. Bird will result in its being subject to a heavy mortgage debt of such character as will render it subject to sale, and it is not made to appear by W. C. Bird that he can retain it as his homestead, then it should be assigned to the children of one or the other of the brothers as the chancellor may, in his discretion, determine is best under all the circumstances. The plaintiffs allege that such a mortgage deed exist; that defendant Bird is in no condition to redeem ; that the assignment of the homestead place to him is an assignment virtually to his creditors or to purchasers at a sale to be had under the mortgage; that both he and his wife have waived all right of homestead in the premises, and have executed deeds by which they have consented to a sale to pay their debt. If this will be the result, then it is manifestly and plainly unjust to prefer the creditors of W. C. Bird to the children of his brothers. If this will not be the result, then defendant Bird has certainly an equal right to the homestead, and such assignment should not be disturbed. The assignment cannot be affected by a liability to account, if there be such liability, or the appropriation of past crops. It should be made with reference to the respective situations of those interested to the property before partition. In this case the

Bird et al. v. Earle & Perkins.

homestead was occupied by W. C. Bird; the plaintiffs, infants, had other homes. Why should they be given the homestead, and W. C. Bird denied it? W. C. Bird is the only surviving son, and has been occupying it as a home.

The record now before the court does not enable us to come to any conclusion upon this subject, nor did the testimony and record before the chancellor enable him to pass upon this question. The result is that this case must go to the court below for a determination of the question of partition and for further proceedings. The decree dismissing the bill as to Earle & Perkins is affirmed. The interlocutory decree, so far as it assigns to defendant W. C. Bird the homestead place, is reversed, and the case is remanded for further proceedings not inconsistent with this opinion and conformable to law.