922 So.2d 285 (2006)
Richard SCHROEDER, Appellant/Cross-Appellee,
v.
Brenda LAWHON, Appellee/Cross-Appellant.
No. 2D05-194.
District Court of Appeal of Florida, Second District.
February 10, 2006.
Rehearing Denied March 16, 2006.
*286 Richard LaBelle of Law Offices of Richard LaBelle, P.A., Dunedin (withdrew after *287 briefing); Leslie M. Conklin, Clearwater (substituted as counsel of record), for Appellant/Cross-Appellee.
Dennis R. Pemberton of Harper, Kynes, Geller & Buford, P.A., Clearwater, for Appellee/Cross-Appellant.
WALLACE, Judge.
In this case we are called upon to address a trial court order for the partition in kind of real property. Richard Schroeder, the appellant/cross-appellee, challenges the order because the trial court refused to confirm the commissioners' recommendation concerning the partition of the property and instead adopted an alternative proposal suggested by Brenda Lawhon, the appellee/cross-appellant. Mr. Schroeder also argues that the trial court erred by requiring him to pay a disproportionate share of the past real estate taxes assessed against the property. Ms. Lawhon cross-appeals the order because it does not contain legal descriptions of the parcels proposed to be allotted to the parties. Ms. Lawhon also attacks the order because it did not determine whether the parties had paid their rightful shares of the past real estate taxes assessed against the property and did not adjust their liabilities for those payments. On Mr. Schroeder's appeal, we reverse because Ms. Lawhon failed to carry the burden of proof on her objection to the recommendation of the commissioners by establishing that it was so unequal as to create a manifest injustice. We also reverse the portion of the trial court's order that required Mr. Schroeder to pay a disproportionate share of the past real estate taxes. Our reversal on Mr. Schroeder's appeal renders moot the first part of Ms. Lawhon's cross-appeal. The commissioners' report does include legal descriptions of the parcels allotted to the parties. On the second part of the cross-appeal, we find no error because neither party presented any evidence in the proceedings below from which the trial court could have determined and adjusted the parties' respective liabilities for the past real estate taxes. For these reasons, we affirm on Ms. Lawhon's cross-appeal.

I. BACKGROUND
The parties are brother and sister. They became tenants in common of the property at issue after their mother died in 1998. According to Ms. Lawhon, Mr. Schroeder and she were "born and raised" on the property.
The property is located on the Anclote River near Tarpon Springs, in northern Pinellas County. It consists of 4.92 acres and is rectangular with approximately 350-400 feet of riverfront on the northwestern portion. A dirt road, which runs along the southern boundary of the property, provides access from Jasmine Avenue. Appraisals of the property received in evidence reflect that the county zoning ordinances applicable to the property include a minimum two-acre building site requirement.
There are two residences located on the property. Ms. Lawhon resides in the older, family home, which was built in 1957. This residence has 1637 feet of living area and is located approximately in the center of the property.
Mr. Schroeder resides in a newer home, which he built in the mid-1990s, on the northern part of the property. Because this portion of the property is further from the dirt road and closer to the river than the original residence, it is sometimes referred to as the "back parcel." Mr. Schroeder paid the expenses for the construction of his residence with his own funds. His residence has approximately 2800 square feet of living area and various *288 modern amenities. Each of the residences has its own well for drinking water.
Mr. Schroeder also constructed a separate 2400-square-foot garage on the northern half of the property along the eastern boundary. He uses this garage as a work shed in connection with a lawn maintenance business that he owns and operates. The work shed is somewhat closer to Ms. Lawhon's home than to Mr. Schroeder's. Ms. Lawhon testified at a hearing in the trial court that she was frequently disturbed by loud noises coming from the work shed.
At the time of the hearing, both parties used a driveway running from the dirt road along the eastern boundary of the property to reach their respective residences. Ms. Lawhon testified that she and Mr. Schroeder had both been using this driveway since their mother died. In the past, another driveway along the western border of the property had been used to reach Ms. Lawhon's residence from the dirt road. Ms. Lawhon testified that this driveway, last used in the early 1980s, was no longer usable because it was obstructed by vegetation and by a large borrow pit that Mr. Schroeder had dug. The commissioners reported that the borrow pit had been created to get fill dirt to repair severe erosion and that the pit had been only partially refilled.

II. THE PROCEEDINGS IN THE TRIAL COURT

A. Pretrial
Mr. Schroeder filed the partition action in November 2001. Eighteen months later, the trial court entered a partial summary judgment. In this judgment, the trial court ruled that each of the parties held "an equal undivided 50% interest in the entire property" and that partition of the property was appropriate. Each of the parties named one person to act as a partition commissioner, and those two commissioners chose a third. By a separate order, the trial court appointed the persons so selected as the partition commissioners. Two of the commissioners were experienced real estate attorneys; the third was a senior real estate appraiser.

B. The Commissioners' Report
The commissioners submitted a written report of their findings and recommendations (the Report) to the trial court. In pertinent part, the commissioners found that Mr. Schroeder alone had funded the construction of his house, "with the expectation of being granted title by his mother." The commissioners recommended dividing the property into two parcels in accordance with a survey that was incorporated into the Report. Parcel 1 was allotted to Ms. Lawhon; Parcel 2 was allotted to Mr. Schroeder. Parcel 1 incorporates most of the southern and central portions of the property, including Ms. Lawhon's residence. It comprises 2.77 acres and has approximately 140 feet of frontage on the river. The back parcel was designated as Parcel 2. This parcel includes Mr. Schroeder's house and the work shed. Parcel 2 also encompasses a relatively narrow strip of land  including the existing driveway  extending to the dirt road along the eastern boundary of the property. Parcel 2 comprises 2.15 acres. Although Parcel 2 is smaller than Parcel 1, its northerly location on the property gives it substantially more river frontage than the larger parcel. The commissioners reported that Parcel 1 and Parcel 2 "are approximately equal in value if one does not take into consideration the value of [Mr. Schroeder's] house."
The division of the property recommended by the commissioners in the Report *289 gave both parcels frontage on the dirt access road. The narrow strip of land along the eastern boundary, assigned to Parcel 2, was essential to give Mr. Schroeder access from the dirt road to his residence and to the work shed. Under the commissioners' recommendation, each parcel would have independent access to the road.
On the practical issue of how the parties would reach their residences, the commissioners made two alternative recommendations. The approach they offered as being consistent with the highest and best use of the property was to provide Ms. Lawhon a nonexclusive easement for ingress and egress and for utilities along the long, narrow strip of land at the eastern boundary of the property assigned to Parcel 2. In the judgment of the commissioners, such an easement should be accompanied by a recorded maintenance agreement burdening both parcels. This approach offered advantages for both parties. Mr. Schroeder could share the expense of the maintenance of the existing driveway with Ms. Lawhon. She could avoid the expense of opening and maintaining a separate route to her residence.
Despite the potential benefits of sharing the driveway, the commissioners recognized that the animosity existing between Mr. Schroeder and Ms. Lawhon might make the implementation of the proposal for the shared right of way impractical. The alternative that they proposed was for Ms. Lawhon to reach her residence from the dirt access road along the western border of the property where the old driveway had been located. This approach would not require the creation of an easement and would give each of the parties a separate route to their respective residences.
Upon the filing of the Report, Ms. Lawhon timely filed her objections to it. Mr. Schroeder then filed a motion to confirm the Report.

C. Ms. Lawhon's Objections to the Report
Ms. Lawhon raised four objections to the Report. First, she contended that the recommended division would result in a substantial inequality that favored Mr. Schroeder. Second, Ms. Lawhon criticized the commissioners' alternative recommendation that she reach her residence by means of the old driveway which had fallen into disuse. She favored the creation of an easement along the existing shared driveway. Ms. Lawhon's last two objections to the Report concerned recommendations that the commissioners had made about the payment of the past real estate taxes.[1] The commissioners had recommended that each of the parties pay one-half of the taxes for 2002 and 2003. The taxes assessed against the property for those years were still unpaid when the commissioners filed the Report in May 2004. In her third objection, Ms. Lawhon argued that an equal division of liability for the taxes would unfairly require her to pay the increased property taxes attributable to Mr. Schroeder's residence. Finally, Ms. Lawhon asserted that she had previously paid more than one-half of the taxes assessed against the property and that Mr. Schroeder should be required to reimburse her for her payments that were in excess of her proportionate share.[2]

*290 D. The Hearing on the Motion to Confirm and the Objections to the Report
The trial court conducted an evidentiary hearing on Mr. Schroeder's motion to confirm the Report and on Ms. Lawhon's objections to it. Mr. Schroeder presented the testimony of Francois K. Gregoire, a residential real estate appraiser, in support of the division of the property recommended in the Report. Mr. Gregoire had prepared appraisals of Parcel 1 and Parcel 2 as identified in the Report. Both of these appraisals were admitted into evidence. For the purpose of preparing these appraisals, Mr. Gregoire ignored the value of the improvements on both parcels. Thus the appraisals made by Mr. Gregoire of Parcel 1 and Parcel 2 reflect only the land value of the parcels.[3] Mr. Gregoire testified that the land value of Parcel 1 was $450,000. He appraised the land value of Parcel 2 at $375,000.
Although Mr. Gregoire conceded that the back parcel assigned to Mr. Schroeder in the Report had more river frontage than the parcel assigned to Ms. Lawhon, he said that both parcels enjoyed a similar view of the river. Mr. Gregoire also observed that with an appropriate zoning change, the parcel assigned to Ms. Lawhon could be subdivided into two or, possibly, three home sites. Mr. Gregoire did not assign any additional value to Parcel 1 because of this possibility, but he testified that it would be something that a buyer would consider as an element adding value to the property. The location and configuration of Parcel 2 would make any further division of that parcel a practical impossibility.
Ms. Lawhon presented the testimony of Deborah Hall, another residential real estate appraiser, in support of her objections to the Report. Ms. Lawhon had engaged Ms. Hall to devise an "equitable split" of the property that would allow both parties to remain in their respective residences. Ms. Hall did not appraise Parcel 1 and Parcel 2 as described in the Report. Instead, Ms. Hall assumed that the property would be divided into two parcels consisting of 3.25 acres and 1.25 acres.[4] She then prepared appraisals of those parcels. These appraisals were admitted into evidence at the hearing.
Under the "equitable split" proposed by Ms. Hall, the larger parcel  to be assigned to Ms. Lawhon  was to include the older, family residence and the work shed that Mr. Schroeder used in connection with his business. The smaller parcel  to be assigned to Mr. Schroeder  was to include his residence. Ms. Hall appraised the larger parcel's total value at $359,000. Ms. Hall opined that the smaller parcel's total value was $603,000. For purposes of her appraisals, Ms. Hall assumed that Ms. Lawhon would reach her residence by using the existing driveway that ran along the eastern boundary of the property.
Ms. Hall did not provide a survey or even a sketch delineating the division of the property that she proposed. Furthermore, she had no legal descriptions of the proposed parcels. The assumed division of the property did not account for almost one-half acre of the 4.92-acre property. *291 For these reasons, it was impossible to determine the dimensions or locations on the property of these ill-defined parcels.
Although Ms. Lawhon took the witness stand in support of her objections to the Report, she did not offer any opinion testimony concerning the value of the parcels recommended by the commissioners in their Report or in the alternative proposal made by Ms. Hall. Concerning the Report's recommendations about the payment of the real estate taxes, Ms. Lawhon expressed her opinion that the commissioners' proposal was unfair because it burdened her with an increase in the property taxes attributable to Mr. Schroeder's improvements. Although both parties addressed the issue of liability for taxes at the hearing, neither of them offered any evidence of the amount of the taxes assessed against the property or the total amounts that they had paid for taxes.

E. The Trial Court's Ruling
The trial court concluded that partition of the property in kind was appropriate but refused to confirm the Report. Instead, the trial court adopted Ms. Hall's alternative proposal for the division of the property. In support of its ruling, the trial court found that "the Report does not recommend a fair and equitable partition of the property in question." The trial court expressed concerns about what it characterized as the Report's failure to consider the current use of the property, the available waterfront, and the terrain. The trial court continued by finding that the division of the property proposed by Ms. Hall "would result in a fair and equitable partition of the subject property." The trial court ordered that the property "shall be partitioned in accordance with the allocation set forth in the Hall [appraisals]."
The trial court also ordered that "the existing easement [sic] along the eastern border of the property shall remain and shall be utilized by both the Plaintiff and the Defendant to gain access to their portion of the property." Finally, the trial court ordered that Mr. Schroeder would be liable for payment of sixty-three percent of the past real estate taxes and Ms. Lawhon would be responsible for payment of thirty-seven percent. The trial court determined these percentages by comparing the value of each party's parcel as appraised by Ms. Hall to the value of the entire property.
As Ms. Lawhon has argued in her cross-appeal, the trial court's order was incomplete in two important respects. First, the order incorporated by reference Ms. Hall's real estate appraisals to describe the parcels to be assigned to the parties, but the appraisals did not include a survey or otherwise adequately describe the parcels to be distributed to the parties. In a similar situation, the First District said:
It is well established that a judgment for conveyance of real property can itself have the effect of a duly executed conveyance and can be recorded as such. Fla. R. Civ. P. 1.570(d). In the instant case, however, the Stipulation and the Final Decree were incapable of vesting title because neither document contained, or even made reference to, a legal description of the property and interests involved.
Williams v. Shuler, 551 So.2d 585, 587 (Fla. 1st DCA 1989). In this case, as in Williams, the order of partition was insufficient to vest title to the two parcels in the parties because it did not include legal descriptions of the parcels. In a related matter, the trial court did not define or describe the proposed "easement" or address who would maintain it. Second, although the trial court allocated each party's proportionate share of the liability for past real estate taxes, it did not award a *292 specific dollar amount in favor of the party who had paid more than his or her share of the taxes. This additional step was necessary to provide the party who had paid more than his or her share of the taxes with relief that was meaningful instead of abstract.

III. THE APPLICABLE LAW
Actions for partition are governed by chapter 64, Florida Statutes (2001), and they are based on equitable principles. Thompson v. Mitchell, 429 So.2d 388, 390 (Fla. 1st DCA 1983). Once a judgment for partition is entered, section 64.061 controls the applicable procedure. In pertinent part, the statute provides:
(1) Appointment and removal.  When a judgment of partition is made, the court shall appoint three suitable persons as commissioners to make the partition. They shall be selected by the court unless agreed on by the parties. They may be removed by the court for good cause and others appointed in their places.
(2) Powers, duties, compensation and report of commissioners.  The commissioners shall be sworn to execute the trust imposed in them faithfully and impartially before entering on their duties; have power to employ a surveyor, if necessary, for the purpose of making partition; be allowed such sum as is reasonable for their services; to make partition of the lands in question according to the court's order and report it in writing to the court without delay.
(3) Exceptions to report and final judgment.  Any party may file objections to the report of the commissioners within 10 days after it is served. If no objections are filed or if the court is satisfied on hearing any such objections that they are not well-founded, the report shall be confirmed, and a final judgment entered vesting in the parties the title to the parcels of the lands allotted to them respectively, and giving each of them the possession of and quieting title to their respective shares as against the other parties to the action or those claiming through or under them.
Section 64.061 assigns the critical role in the partition process to the commissioners. The duty of making a fair and equitable division of the property devolves primarily on them. See Munroe v. Birdsey, 102 Fla. 544, 136 So. 886, 888 (1931). Since the statute gives the commissioners the power to employ a surveyor if necessary, they also have the responsibility to obtain correct legal descriptions of the parcels to be allotted to the parties.
The statute does not offer any guidance to the commissioners concerning how to make the partition of the property. Undoubtedly, the circumstances that arise concerning the division of property are too various to make any detailed directives possible. However, some general advice is available. In making a partition of property, commissioners should be guided by the principle stated by Justice Joseph Story and quoted with approval by the Supreme Court of Florida: "`The court should assign to the parties respectively such parts of the estate as would best accommodate them and be of most value to them with reference to their respective situations in relation to the property before the partition.'" Bird v. Bird, 15 Fla. 424, 445-46 (1875).
Upon the completion of their investigation, the commissioners are to make a partition of the property and report it to the court in writing. § 64.061(2). The parties have ten days from the service of the commissioners' report to file objections to it. § 64.061(3). In accordance with the statute, the court must confirm the commissioners' report if there are no objections *293 or if any objections filed are unfounded. Id. Thus the objecting party or parties have the burden of proof on the issue of whether the commissioners' report should be confirmed.
Despite the substantial responsibilities vested in the commissioners by the statute, their report is not conclusive on the court. See Thompson, 429 So.2d at 390. The trial court has considerable discretion to confirm the report or to sustain objections to it. See Bird, 15 Fla. at 445; see also Thompson, 429 So.2d at 390 (declining to hold a commissioners' report conclusive). In addition, the trial court has the authority to remove the commissioners for good cause and to appoint their replacements. § 64.061(1). Even so, if the objections are not well-founded and the commissioners' report is supported by evidence in the record, the trial court must confirm the report. See Thompson, 429 So.2d at 390. An objection to the commissioners' report should not be sustained unless it is supported by competent, substantial evidence in the record. The "unsupported, subjective" testimony of an objecting party is not a sufficient basis upon which an objection to a commissioners' report may be sustained. See id. at 389-90.
The trial court may set aside and refuse to confirm a commissioners' report for several reasons. These reasons include mistake, procedural irregularities in the preparation and submission of the report, and substantial inequality of value in the portions allotted to the parties. See Brokaw v. McDougall, 20 Fla. 212, 227-35 (1883). A trial court is authorized in refusing to confirm a commissioners' report on account of an objection based on the "alleged inequality in the quantity and quality" of the parcels allotted to the parties if the division recommended in the report is such as to create a "manifest injustice." Id. at 228.
Because land is not fungible, any parcel of real property is likely to have features that make it more or less valuable than another parcel. Therefore, the shares allotted to the parties in partition need not be exactly equal in value.[5] An unequal division of the property may even be justified where one cotenant has improved the property to be divided without contribution by the other cotenant or cotenants. Under these circumstances, the party who made the improvements should receive the benefit of the enhancement he or she has made to the value of the property if this result can be achieved equitably. See Boley v. Skinner, 38 Fla. 291, 20 So. 1017, 1018 (1896). See generally 59A Am. Jur.2d Partition §§ 159-73 (2003) (discussing adjustments for improvements); 68 C.J.S. Partition § 120 (1998) (discussing improvements); H.D.B., Adjustment on Partition of Improvements Made by Tenants in Common, 1 A.L.R. 1189 (1919), supplemented, R.P.D., 122 A.L.R. 234 *294 (1939); 2 American Law of Property § 6.18, at 82 (A. James Casner, ed., 1952) (discussing adjustment in favor of cotenant who has made improvements).
Section 64.061 is silent concerning the procedure to be followed when the trial court sustains an objection to a commissioners' report. An early Florida case suggests that in this event the appropriate procedure is for the trial court to remand the matter to the commissioners with directions to make a different allotment of the parcels. See Brokaw, 20 Fla. at 227. This procedure appears to be in accord with the general practice in the United States. See generally 59A Am.Jur.2d Partition § 127 (2003); 68 C.J.S. Partition § 138 (1998). Under section 64.061, a remand to the commissioners may be a practical necessity. The statute gives the commissioners  not the trial court  the power to employ a surveyor. Unless the property has already been subdivided, only a surveyor can prepare the necessary legal descriptions of the parcels to be allotted to the parties.[6] If good cause appears, the trial court may also remove the commissioners and appoint replacements. § 64.061(1). The trial court could then direct the new commissioners to make a different division of the property in accordance with the court's instructions.
With these principles in mind, we turn now to a review of the trial court's decision in this case.

IV. DISCUSSION

A. The Partition
Initially, we note that Ms. Hall's appraisals did not provide an appropriate basis for the partition of the property for two separate, fundamental reasons. First, as we have seen, Ms. Hall's appraisals were not accompanied by a survey or even a sketch showing the proposed division of the property. Thus it was impossible to ascertain if the division of the property suggested by Ms. Hall was feasible or if the parcels Ms. Hall envisioned in her appraisals were substantially equal in value.[7] Second, the zoning regulations applicable to the property required a minimum of two acres for a building site. Ms. Hall proposed that Mr. Schroeder be allotted a parcel consisting of 1.25 acres. If this proposal were put into effect, the parcel assigned to Mr. Schroeder would be nonconforming to the existing zoning regulations. The trial court erred in ordering a partition of the property that would result in causing a parcel to be assigned to one of the parties to be nonconforming to the existing zoning regulations.[8]
More to the point, Ms. Hall's appraisals and hearing testimony did not address the critical issue before the trial court raised by Ms. Lawhon's objection to the Report. The issue was whether the parcels allotted *295 to the parties were so substantially unequal in quality and quantity as to create a manifest injustice. Instead, Ms. Hall merely proposed an alternative method of dividing the property. She then appraised the ill-defined parcels that she had suggested. In short, the commissioners recommended apples; Ms. Hall appraised oranges. Thus neither the Hall appraisals nor Ms. Lawhon's testimony established that the division of the property recommended in the Report was substantially unequal in the quality and quantity of the parcels allotted to the parties.
Turning to the commissioners' recommendation concerning the division of the property, we note that the parties participated in the selection of the well-qualified commissioners. After completing their investigation, the commissioners concluded that the parcels assigned to the parties in the Report were "approximately equal in value if one does not take into consideration the value of [Mr. Schroeder's] house." On this point, the commissioners got the law right. They correctly concluded that Ms. Lawhon was not entitled to the benefit of the value of the improvements that Mr. Schroeder had constructed on the property with his own funds. See Boley, 20 So. at 1018. The only evidence presented at the hearing on the value of the parcels assigned to the parties in the Report was the testimony of the other appraiser, Mr. Gregoire. His testimony supported the commissioners' assessment that the parcels they had recommended in the Report were approximately equal in value. Indeed, the value of these parcels as determined by Mr. Gregoire favored Ms. Lawhon. Thus there was no evidence presented at the hearing of a substantial inequality of value in the parcels allotted to the parties in the Report. Because the Report was supported by the only competent, substantial evidence in the record, Ms. Lawhon's objections to the division of the property recommended in the Report were unfounded. For this reason, the trial court abused its discretion in failing to confirm the division of the property recommended in the Report.

B. The "Easement"
The trial court also erred in ruling "that the existing easement [sic] along the eastern border of the property shall remain and shall be utilized by both [Ms. Lawhon] and [Mr. Schroeder] to gain access to their portion of the property." In fact, there was no "existing easement." Both parties owned an undivided one-half interest in the entire property. The "existing easement" was nothing more than a shared driveway. Furthermore, the trial court never adequately described the "easement." Ms. Hall's omission to describe specifically the parcels to be allotted to the parties under her proposal made it impossible to determine who had fee simple title to the driveway and who owned the "easement."
In addition to these difficulties, it was inappropriate for the trial court to grant either of the parties an easement under the circumstances of this case. The commissioners' recommendation that an easement be created in favor of Ms. Lawhon in the location where the shared driveway was located was contingent upon the parties' agreement. The commissioners specifically noted that the animosity between the parties would probably make this recommendation impractical.[9] However, the *296 division of the property recommended in the Report did not leave Ms. Lawhon landlocked. On the contrary, the division gives Ms. Lawhon substantially more frontage on the dirt access road than it gives Mr. Schroeder. Under the division of the property proposed in the Report, Ms. Lawhon has access to the parcel allotted to her at multiple locations along the dirt road. Therefore, no easement is necessary.[10] We recognize that partition of the property in accordance with the Report will likely require Ms. Lawhon to restore the old driveway to her residence along the western border of the property to a usable condition. Undoubtedly, this will cause her additional expense and inconvenience. This regrettable consequence is one of the unfortunate incidents of the joint ownership of real property, the partition process, and the parties' apparent inability to cooperate with each other on matters of mutual concern.

C. The Taxes
On his appeal, Mr. Schroeder also argues that the portion of the trial court's order that required him to pay sixty-three percent of the past real estate taxes and Ms. Lawhon to pay only thirty-seven percent was in error. We agree, and we reverse the trial court's ruling on this point. As cotenants of the property, the parties each had an obligation to pay their proportionate share of the obligations and expenses of the property, including the real estate taxes. See Burnett v. Burnett, 742 So.2d 859, 861 (Fla. 2d DCA 1999); Hawkins v. Hawkins, 895 So.2d 1155, 1156 (Fla. 1st DCA 2005); O'Donnell v. Marks, 823 So.2d 197, 199 (Fla. 4th DCA 2002); Bermudez y Santos v. Bermudez y Santos, 773 So.2d 568, 570 (Fla. 3d DCA 2000). In the partial summary judgment entered previously, the trial court had ruled that each of the parties had a one-half interest in the property. Therefore, they were each responsible for one-half of the taxes, not a disproportionate percentage. On remand, the trial court shall include a provision in the final judgment of partition finding that the parties are each responsible for payment of one-half of the past real estate taxes.
On her cross-appeal, Ms. Lawhon challenges the trial court's order because it did not determine Mr. Schroeder's liability to her for the past real estate taxes and enter judgment in her favor and against him for the amount due. Generally speaking, it is appropriate in a partition action for the trial court to adjust the parties' liabilities for the payment of the obligations and expenses of the property such as the past real estate taxes. See Burnett, 742 So.2d at 861. However, in this case, neither of the parties presented any evidence at any point in the proceedings below that they had paid more than their proportionate share of the real estate taxes. Therefore, we find no error on this point because there is no evidence in the record from which the trial court could have made the findings necessary to adjust the parties' liability for the past real estate taxes. For this reason, we affirm the trial court's order on this part of Ms. Lawhon's cross-appeal.

V. CONCLUSION
On Mr. Schroeder's appeal, the order of partition is reversed. On remand, the trial *297 court shall enter a final judgment confirming the division of the property recommended in the Report. The final judgment must assign Parcel 1 to Ms. Lawhon and Parcel 2 to Mr. Schroeder and include a complete legal description of each parcel.[11] The final judgment shall not include an easement. In the final judgment, the trial court shall also make a finding that each of the parties is liable for the payment of one-half of the past real estate taxes assessed against the property since the date their joint ownership of the property began and through the date of the entry of the final judgment of partition. On Ms. Lawhon's cross-appeal, her first point concerning the omission from the order of partition of legal descriptions of the parcels to be allotted to the parties is now moot. We find no error on the second point of the cross-appeal for the reasons previously stated. Therefore, we affirm on the cross-appeal.
Affirmed in part; reversed in part; remanded with directions.
SALCINES and VILLANTI, JJ., Concur.
NOTES
[1] We believe that the issue of liability for the payment of past real estate taxes in a partition action is a question of law for the court. See O'Donnell v. Marks, 823 So.2d 197, 199 (Fla. 4th DCA 2002).
[2] At the hearing on the objections and the motion to confirm held in November 2004, Mr. Schroeder's attorney said that his client had paid the taxes for 2002 and 2003.
[3] Mr. Gregoire's appraisal method was actually favorable to Ms. Lawhon. Although Mr. Schroeder claimed a credit for the value of the new residence he had constructed on Parcel 2 with his own funds, Ms. Lawhon could not claim any credit for the older, family home on Parcel 1 in which she resided.
[4] Ms. Hall did not explain how she arrived at this assumption as a starting point for her analysis.
[5] In an early case, the Supreme Court of Florida said that where a partition in kind is made, "parties who receive more than their share of the estate may be required to make a pecuniary compensation to those who receive less." Brock v. Doyle, 18 Fla. 172, 174 (1881). This is a reference to the doctrine of owelty. The term "owelty" refers to "[e]quality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property." It may also refer to "[t]he sum of money so paid." Black's Law Dictionary 1137 (8th ed.2004). Because chapter 64 does not provide for the payment of owelty, a question arises whether the doctrine remains in effect in Florida. See I. William Spivey, Partition, in Florida Real Property Litigation § 4.19 (Fla. Bar CLE 4th ed.2005). In this case, neither of the parties requested the payment of owelty in the trial court. Therefore, we need not reach this issue.
[6] The facts in this case illustrate the problem. The trial court's order of partition directed that the property be divided in accordance with the appraisals prepared by Ms. Hall. However, the Hall appraisals provided only the most general descriptions of the proposed parcels, and the trial court's order did not supply the necessary metes and bounds descriptions of the portions of the property to be assigned to the parties.
[7] Whatever the relative quality of the two proposed parcels, they were not substantially equal in quantity. Under Ms. Hall's proposal, seventy two percent of the land area was to be assigned to Ms. Lawhon; only twenty-eight percent was to be assigned to Mr. Schroeder.
[8] The parties appear to assume that the property can be divided into two parcels with a minimum of two acres each consistent with existing Pinellas County regulations and that the necessary approvals, if any, for such a division of the property can be obtained. This issue was not raised in the trial court, and it has not been briefed or argued on this appeal. Therefore, we express no opinion on it.
[9] The proceedings at the hearing in the trial court confirmed the commissioners' reservations. Mr. Schroeder's attorney told the trial court: "Your Honor, I can tell you that in the course of this litigation we have had repeated disputes and controversies regarding this particular means of ingress and egress. I do not feel that there is any way that the parties can really get along. They haven't to this point. If they had, we wouldn't be here."
[10] Because both parties have road access under the division of property recommended in the Report, we need not decide whether the trial court is authorized to establish a way of necessity in connection with an action for partition. See § 704.01-.04, Fla. Stat. (2001).
[11] A form for a "Judgment  Confirming report of commissioners in partition and vesting title" is available at 2 Florida Pleading & Practice Forms, section 18:21.