# Third District Court of Appeal

## State of Florida

Opinion filed April 7, 2021.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D20-156
Lower Tribunal No. 15-23790

————————

**Sharee Bailey,**
Appellant,

vs.

**Arva Covington,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Martin Zilber and Rodney Smith, Judges.

Kevin Coyle Colbert, for appellant.

Hazel Law, P.A., and Robin F. Hazel (Hollywood), for appellee.

Before SCALES, HENDON and GORDO, JJ.

HENDON, J.

Sharee Bailey ("Bailey") appeals from a final order finding her liable for civil theft, fraud, and monies had and received, and awarding Arva Covington ("Covington") fifty percent of the proceeds of the sale of the property as a co-owner, and treble damages for deposit of an escrow check. We reverse.

Bailey and Covington's nephew, Mr. Darnell Williams ("Williams"), were in a domestic relationship and have two children together. When neither of them could qualify to purchase a house, they asked Covington to assist. In 2009, Covington agreed to use her credit to get loan approval, and the deed was issued to Covington and Bailey as tenants in common. Covington's name also appears as co-mortgagor on the mortgage, although Bailey made the down-payment, paid all closing costs, insurance premiums, taxes, monthly mortgage payments, and house maintenance expenses over the years. Covington made no payments towards the property and never resided in the property.

Bailey and Williams lived in the property with their two children until the relationship deteriorated. By mutual agreement, the townhouse was sold on August 15, 2015; both Bailey and Covington were present at the closing. When all obligations had been paid off, the remainder of $84,382.79 was paid into a bank account that was owned by Bailey, who

added Covington's name to her account a few days prior to the closing in order for the title company to transfer the money to an account owned by the two persons shown on the deed, Covington and Bailey. According to the complaint, the day after the sale closed, on August 16, 2015, Covington accompanied Bailey to the bank to have Covington's name removed from the joint account.

There was conflicting testimony regarding the motivation for Covington to remove her name from the joint account: Covington testified that she only agreed to have her name removed from the account because Bailey promised she would split the house proceeds with Covington's nephew, Williams. Bailey testified that Covington never articulated any desire for the money until days after the sale; at that time, Bailey understood that Williams was demanding Covington get the money from Bailey for himself. Bailey testified that she would not split the proceeds with Williams because he had been physically abusing her, never contributed to the house, and because Covington never expressed any desire for the proceeds.

On August 20, 2015, the bank sent a second check for $3,679.76 issued to Bailey and Covington for the remaining balance of the mortgage escrow account. Bailey endorsed the back of the check with her name

3

and, without Covington's knowledge or permission, printed Covington's name below hers and deposited the check into the bank account, now solely owned by Bailey.[1]

Covington filed suit against Bailey alleging that as co-owner of the property she is entitled to fifty percent of the proceeds from the sale. Covington asserted three counts: Count I, civil theft of the proceeds of the sale pursuant to section 812.0145(2)(b), Florida Statutes,[2] seeking treble damages pursuant to section 771.11(1);[3] Count II, fraud, for inducing

---

[1] Bailey asserts that because the Wells Fargo escrow check is a two-payee check that does not contain the words "and" or "or", the nature of the payee is ambiguous and thus is presumed to be alternative payees requiring only one signature for endorsement. The bank representative confirmed this conclusion at the bench trial.

[2] Section 812.0145(2)(b), Theft from persons 65 years of age or older, provides, in part:

> (2) Whenever a person is charged with committing theft from a person 65 years of age or older, when he or she knows or has reason to believe that the victim was 65 years of age or older, the offense for which the person is charged shall be reclassified as follows:

> * * *

>    . . . .
> (b) If the funds, assets, or property involved in the theft from a person 65 years of age or older is valued at $10,000 or more, but less than $50,000, the offender commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

[3] Section 772.11(1), Florida Statutes (2020) provides, in part:

4

Covington to remove her name from the joint account with a false promise; Count III, monies had and received. Covington later filed an amended complaint to incorporate the allegedly fraudulent escrow check deposit.

After hearing testimony and taking evidence, the court awarded judgment in favor of Covington on Count 1 for civil theft, treble damages for half of the escrow check for $3,679.76, or $1839.88 (x 3), and on Counts II and III as to fraud and monies had in the amount of $42,191.39, and found Covington is entitled to attorney's fees. [4]

---

(1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section.

[4] At the hearing, the trial court opined,

. . . [w]hat's at issue is whether or not Ms. Covington is entitled to the proceeds from the sale of the property. Now, what she did do? She put her name up, in terms of getting credit for it, and had this case resulted in default Ms. Covington would have been fully and jointly liable for this property if it had been defaulted. So from the onset she definitely is entitled to the proceeds, because had it defaulted Wells Fargo would have a response. They could not say whether or not she lived there, it's not in dispute. So as to the counts, the Court finds that by greater weight of the evidence, that the plaintiff proved their

5

case. Here's why. You have a check that was written as an easy account first (sic.) The second draft, over $3,679.76. Clearly the defendant testified that she wrote her [Covington's] name on the check without her permission which is fraud. She was not authorized to do so. If she needed -- if she didn't need her name she wouldn't have to put her name on it, so that's clearly -- she committed fraud and also civil theft but putting the plaintiff's name on the check, having to pass through an ATM in order to gain access to the funds.

With respect to the other $42,000 that was demanded by the plaintiff, within five days conveniently the defendant decides to transfer the money to her mother. Five days. Having full knowledge that she was entitled to it. Had the relationship would have been, you know, intact and not irretrievably broken down we wouldn't be having this lawsuit before this Court.

You can't use that relationship to punish Ms. Covington for the fact that she chose she wants to dispose some of the money how she saw fit. She wants to take the money, buy a new car with it, so be it. But let's be clear, Darnel is not entitled to this money legally. If Ms. Covington wants to give it to Darnel, or give it back to Ms. Bailey, or burn it, or buy a new car she can do any and everything she wants to do those funds. It's her right to do so.

Emotionally. I think the defendant's emotion got in the way, and clouded her judgment, and made an ill-advised decision to withhold the money after being told to turn it over. She chose not to do so.        Therefore, the Court believes that by greater weight of the evidence, the plaintiff has proven this case, and that she's entitled to half of the proceeds, the 40 -- I wrote down it down, I took copious notes here -- $42,191.37.

Also, I looked at the amended complaint and also the answers. It's the defendant's position they're entitled to equitable setoff. I didn't see anything plead that they were entitled to improvements made to the property, or any rents that were paid at all. They never plead it. There was nothing alleging that they were entitled -- seeking a setoff should this Court award any funds to the plaintiff.

Therefore, the Court will find judgment for the plaintiff amount of $42,191.37, plus the $3,679.76.

6

Standard of Review

The appellate court reviews the record for substantial, competent evidence to support the trial court's findings of fact, and the standard of review for the trial court's conclusions of law is de novo. MetroPCS Commc'ns, Inc. v. Porter, 273 So. 3d 1025, 1027 (Fla. 3d DCA 2018).

Discussion

Count I - Civil theft of the additional escrow check.

To establish a claim for civil theft, a party must prove 1) that a conversion has taken place and 2) that the accused party acted with criminal intent. See Heldenmuth v. Groll, 128 So. 3d 895, 896 (Fla. 4th DCA 2013) (citation omitted). Such intent must be proven by clear and convincing evidence. § 772.11(1), Fla. Stat. (2020); Transcapital Bank v. Shadowbrook at Vero, LLC, 226 So. 3d 856, 864 (Fla. 4th DCA 2017); Westinghouse Elec. Corp. v. Shuler Bros., Inc., 590 So. 2d 986, 988 (Fla. 4th DCA 1991). The trial court based its conclusion that Bailey committed civil theft of the escrow check by applying a lesser, "greater weight of the evidence" standard of proof. The statute, however, requires proof by "clear and convincing evidence."[5]

---

[5] Section 772.11 (1), Florida Statutes (2020), provides, in part;

7

Keeping this more rigorous standard of proof in mind, the trial court failed to determine whether there was clear and convincing evidence that 1) a conversion took place; 2) whether the check required both parties' endorsements or could be signed by one party; and 3) whether there was any criminal intent on Bailey's part, for purposes of determining whether the elements of civil theft had been proven.[6]

Count II – Fraud

The elements of a fraud claim include (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces

---

(1) Any person who proves <u>by clear and convincing evidence</u> that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. <u>Before filing an action for damages under this section, the person claiming injury must make a written demand</u> for $200 or the treble damage amount of the person liable for damages under this section.

(Emphasis added).

[6] Bailey also argues that Covington did not make a pre-suit written demand for the escrow money, and thus cannot sustain a cause of action under section 772.11(1) (see FN4). We decline to address this issue because Covington did file a pre-suit demand letter for the sale proceeds, and the escrow amount can be considered part of the sale proceeds regardless that the amount requested in the demand letter did not account for the remaining escrow amount.

another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. <u>Lopez-Infante v. Union Cent. Life Ins. Co.</u>, 809 So. 2d 13, 15 (Fla. 3d DCA 2002).

Covington asserts that she was defrauded when she relied on Bailey's assurance that Bailey would give Covington a fifty percent share of the sale proceeds if Covington removed her name from the joint bank account. There is evidence in the record that Covington voluntarily relinquished her rights to the proceeds by taking her name off the joint account the day after the closing, regardless of any oral promise made or not made. The evidence suggests that Bailey only added Covington's name to her bank account right before the closing and only for closing purposes. Covington apparently had the opportunity at the closing to request a separate check for proceeds, and again at the bank the next day. There is also evidence in the record that Covington made no demand for the money until several days later, and only after her nephew pressed her for the proceeds.

Further, the court did not determine whether Bailey made a false statement to Covington concerning a specific material fact. "A false statement of fact, to be a ground for fraud, must be of a past or existing fact, not a promise to do something in the future." <u>Vance v. Indian</u>

_Hammock Hunt & Riding Club, Ltd._, 403 So. 2d 1367, 1371 (Fla. 4th DCA 1981) (citing 27 Fla. Jur. 2d, Fraud and Deceit, § 24). An exception to this general rule is that "where the promise to perform a material matter in the future is made without any intention of performing or made with the positive intention not to perform" a cause of action for fraud may proceed to a jury. Id. at 1372 (citing _Home Seekers' Realty Co. v. Menear_, 102 Fla. 7, 135 So. 402 (1931)). Here, the record does not support the conclusion that Bailey intended to perpetrate a fraud, and the trial court did not make any findings of fact to support the elements of fraud.

Count III – Monies had and received[7]

Covington's count for "monies had and received" alleges that Bailey "surreptitiously gained possession of money rightfully due Plaintiff (Covington); possesses Plaintiff's (Covington's) assets, specifically $42,191.39, which in equity and good conscience Defendant (Bailey) ought to repay, together with interest, to Covington." This cause of action

---

[7] "Money had and received" was developed at common law as one of the common counts in general assumpsit to cover a case in which a person receives money that in equity and good conscience belongs to another. An action for "money had and received," or the more modern action for "unjust enrichment," is said to be a remedy equitable in nature, requiring proof that the money has been paid due to fraud, misrepresentation, imposition, duress, undue influence, mistake, or as the result of some other grounds appropriate for intervention by a court of equity. 66 Am. Jur. 2d Restitution and Implied Contracts § 156 (citations omitted).

requires proof that Bailey fraudulently withheld the sale proceeds and that it would be inequitable for Bailey to retain the entire sale proceeds. The trial court made no findings to support this count.

What is clear from the record on appeal is that Covington's sole contribution to the house purchase was her credit for loan approval. Bailey paid for the property. There is no agreement in the record, or suggestion in the pleadings, that Covington had any expectation of financial remuneration for lending her credit. She was, however, a legal co-owner of the property and co-mortgagee, with all the legal obligations and potential liability that entails. As a tenant-in-common, Covington bore "equal responsibility in making all payments necessary to maintain their ownership of the property." Kelly v. Kelly, 583 So. 2d 667, 668 (Fla. 1991). Indeed, each co-tenant is ultimately liable for his or her proportionate share of the "taxes, mortgage payments, insurance and maintenance and repair." McCarthy v. McCarthy, 922 So. 2d 223, 226 (Fla. 3d DCA 2005).

Accordingly, upon partition, a co-tenant shouldering a disproportionate responsibility for those obligations "is entitled to credit from the proceeds of the sale for the other co-tenant's proportionate share of those expenses." Id. (citation omitted). Martinez-Noda v. Pascual, 305 So. 3d 321, 323 (Fla. 3d DCA 2020); see also Burnett v. Burnett, 742 So.

11

2d 859, 861 (Fla. 2d DCA 1999) (holding a tenant who pays his cotenant's proportional share of expenses such as mortgage payments, taxes, and necessary repairs is entitled to credit for those payments against sale proceeds).

Generally, if one co-tenant pays all the mortgage payments, that party is entitled to credit for payment of the other party's share when the house is sold. Green v. Green, 16 So. 3d 298, 300 (Fla. 1st DCA 2009) (citations omitted). As previously noted, the record shows that Bailey made the down-payment, paid all closing costs, insurance premiums, taxes, monthly mortgage payments, and house maintenance expenses over the years. Covington made no payments towards the property and never resided in the property. Accordingly, the trial court erred in awarding Covington fifty percent of the sale proceeds based solely on her status as co-owner and on the statement that she "would have been fully and jointly liable for this property if it had been defaulted." The court's conclusion fails to take into consideration Bailey's financial and equitable contributions to the maintenance of the property over the years of ownership and is insufficient to sustain the award without further findings of fact.

The trial court failed to make sufficient findings of fact and conclusions of law that addressed the elements of the pleaded causes of

12

action. We therefore reverse the final judgment and remand with instruction to set the matter for an evidentiary hearing and to apply the appropriate standards of proof in determining the pleaded causes of action. The court is additionally instructed to determine Bailey's entitlement to any special equity in the property based on her contribution to the purchase, mortgage, taxes and insurance premiums, and any other maintenance of the property. See Schroeder v. Lawhon, 922 So. 2d 285, 293 (Fla. 2d DCA 2006) (holding an unequal division of the property may even be justified where one cotenant has improved the property to be divided without contribution by the other cotenant or cotenants. Under these circumstances, the party who made the improvements should receive the benefit of the enhancement he or she has made to the value of the property if this result can be achieved equitably).

Reversed and remanded with instructions.